Edouard V. Rosa, (SB 108600)
E-mail: *evrosalaw@att.net*
LAW OFFICES OF EDOUARD V. ROSA
28047 Dorothy Drive, Suite 305
Agoura Hills, California 91301
Telephone: (818) 735-0590
Facsimile: (818) 735-0594

Attorney for Plaintiff
CARS 4 CAUSES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARS 4 CAUSES, a California Corporation | **Case No.:  CV 05 0741 WMB (PLAx)** |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT OF CONSENT JUDGMENT AND ORDER FOR EXPEDITED DISCOVERY** |
| CARS WITH A CAUSE, INC., a California Corporation, JACOB G. COLBERT, JR. an individual and DOES 1 Through 10, inclusive. | DATE:  October 14, 2013<br>TIME:  10:00 A.M.<br>COURTROOM:<br>U.S. DISTRICT JUDGE: |
| Defendants. | |

# TABLE OF CONTENTS

Page(s)

I.     STATEMENT OF RELEVANT FACTS ......................................................................1

II.    ARGUMENT ..............................................................................................................8

    A.    The Injunction is Clear and Unambiguous.......................................................9

    B.    The Contempt Respondents Are all Bound By This Court's Injunction...............9

    C.    The Contempt Respondents Are In Contempt of This Court's Injunction...........10

    D.    The Contempt Respondents' Acts of Service Mark

        Infringement And Unfair Competition Violate the Injunction...........................13

        1.    Infringement of Plaintiff's Cars 4 Causes Service Marks .......................13

        2.    Infringement of Plaintiff's Cars 4 Causes Tradename ...........................15

    E.    The Contempt Respondents' Acts of Cyber Piracy Violate the Injunction .........16

    F.    Sanctions Should Be Imposed Against the Contempt Respondents ...................17

    G.    Contempt Respondents Should Be Required To Post A Bond ..........................17

    H.    Expedited Discovery Is proper In This Action....................................................17

III.   CONCLUSION ..........................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*Additive Controls & Measurements Sys., Inc.,*
154 F.3d 1345 (Fed. Cir. 1998)..................................................................10

*Adray v. Adray-Mart, Inc.,*
76 F.3d 984 (1995)....................................................................................17

*American Petrofina, Inc. v. Petrofina of California, Inc.,*
596 F.2d 896 (9th Cir. 1979) ....................................................................15

*AMF, Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979) ...............................................................14, 15

*BMG Music v. Perez,*
4952 F.2d 318 (9th Cir. 1991) ..............................................................8, 17

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005) ....................................................................16

*Brookfield Communications v. West Coast,*
174 F.3d 1036 (9th Cir. 1999) .........................................................13, 14, 15

*Century 21 Real Estate v. Sandler,*
846 F.3d 1175 (9th Cir. 1988) ..................................................................13

*Eclipse Associates Ltd. v. Data General Corp.,*
666 F.2d 393 (9th Cir. 1982) ......................................................................9

*G. & C. Merriam Co. v. Webster Dictionary Co.,*
639 F.2d 29 (1st Cir. 1980)....................................................................8, 10

*General Signal Corp. v. Donallco, Inc.,*
787 F.2d 1376 (9th Cir. 1986) ...............................................................8, 17

*GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.,*
445 U.S. 375 (1980)....................................................................................8

*In re Dual-Deck Video Cassette Antitrust Litigation,*
10 F.3d 693 (9th Cir. 1993) ........................................................................9

*Internet Specialties West, Inc. v. Milon-Digiorgio Enters,*
559 F.3d 985 (9th Cir. 2009) ....................................................................14

Page(s)

*Peterson v. Highland Music, Inc.,*
140 F.3d 1313 (9th Cir. 1998) .................................................................8

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*
793 F.2d 1132 (9th Cir. 1986) ...............................................................10

*Shillitani v. United States,*
384 U.S. 364 (1966)........................................................................8, 17

*United States v. Ayres,*
166 F.3d 991 (9th Cir. 1999) ...................................................................9

*Wella Corp. v. Wella Graphics, Inc.,*
37 F.3d 46 (2nd Cir. 1994) .................................................................9, 13

*Whittaker Corp. v. Execuair Corp.,*
953 F.2d 510 (9th Cir. 1992) .................................................................17

*Wolfard Glassblowing Co. v. VanBragt,*
118 F.3d 1320 (9th Cir. 1997) ................................................9, 10, 12, 13

## **FEDERAL RULES**

Fed. R. Civ. P. 26(d) ............................................................................17
Fed. R. Civ. P. 33(a) ............................................................................17
Fed. R. Civ. P. 65(d) ..............................................................................9
Fed. R. Civ. P. 65(d)(2).........................................................................8

## **FEDERAL STATUTES**

15 U.S.C. § 1051 .................................................................................11
15 U.S.C. § 1057(6) .............................................................................13
15 U.S.C. § 1114(1)(a)..........................................................................13
15 U.S.C. § 1115(a) .............................................................................13
15 U.S.C. § 1115(b) .............................................................................13
15 U.S.C. § 1117(d) .............................................................................16
15 U.S.C. § 1125(a)(1)..........................................................................13
15 U.S.C. § 1125(d) .............................................................................16
15 U.S.C. § 1125(d)(1) .........................................................................16

## **STATE STATUTES**

California Bus. & Prof. Code § 14415.....................................................15

## **MISCELLANEOUS**

The Free Dictionary By Farlex ..............................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

This is a motion for contempt and an order for expedited discovery.  As set forth more fully below, Cameron L. Arballo aka Cameron Arballo aka Cameron Lee Arballo aka Rev. D. L. Arballo aka Vincent Everett and individual ("Arballo") and Works of Life International Ministries, Inc., Works of Life Ministries, Online Car Donation.Org, Inc., Boats With Causes.Org, Giving Center and With Causes, Inc. (collectively referred to as "Contempt Respondents") are in violation of this Court's Consent Judgment and permanent injunction entered on June 2, 2005, (the "Injunction") in the above action and Plaintiff Cars 4 Causes ("Plaintiff") requires the Court's enforcement of the Injunction.

In the above regard, Contempt Respondents have violated the terms of the Injunction by their acts of service mark infringement, false designation of origin, tradename infringement, unfair competition and cyber piracy.  As such, Plaintiff moves for an issuance of an Order for Contempt Respondents to show cause why they should not be held in contempt of court for violating the Injunction which permanently enjoined and restrained defendant, Jacob G. Colbert, Jr. and among others his agents and all persons acting in concert or participation with him which the evidence will show includes Contempt Respondents "from all further use of the tradename 'CARS WITH A CAUSE' and the domain name 'carswithacause.org' or any other term confusingly similar to plaintiff's 'CARS 4 CAUSES' service mark, tradename and domain names containing the CARS 4 CAUSES designation in connection with the advertising, distribution, offering for sale or sale of any charitable vehicle donation program services or any other business of defendant of any kind in the United States." (See, Declaration of Edouard V. Rosa ("Rosa Dec.") ¶ 4, Exhibit ("Exh.") 2).

## I.

## STATEMENT OF RELEVANT FACTS

Plaintiff is a well known 501(c)(3) non-profit organization incorporated in the State of California on July 3, 1997, that supports numerous charitable organizations throughout the United States by providing charitable donation program services which allow donors to direct a portion of their net donation proceeds to designated charities ("Plaintiff's donation program services") under the well known and distinctive Cars 4 Causes trade name and Cars 4 Causes service marks, namely, CARS 4 CAUSES, CARS WITH A CAUSE, CARS FOR A CAUSE, CARS FOR CAUSES,

COMMUNITITES FOR CAUSES, COMMUNITIES 4 CAUSES, BOATS 4 CAUSES, GOODS 4 CAUSES, GOODS FOR CAUSES, MOTORCYCLES 4 CAUSES, GADGETS 4 CAUSES and RVs 4 CAUSES which are all federally registered (collectively referred to as "Cars 4 Causes service marks"). (See Declaration of Patti Palmer ("Palmer Dec.") ¶3, Exh. 17 filed concurrently herewith and Rosa Dec. ¶9, Exh. 7).

Plaintiff has continuously and extensively used, advertised and promoted the Cars 4 Causes tradename and the Cars 4 Causes service marks in commerce in the United States in connection with Plaintiff's donation program services on its Web Sites and in TV, radio and print advertising in connection with Plaintiff's donation program services since at least as early as April 1997. (Palmer Dec. ¶4, Exh. 18; Rosa Dec., Exh. 7).

Plaintiff's CARS 4 CAUSES, CARS WITH A CAUSE, CARS FOR A CAUSE and CARS FOR CAUSES service marks are also incontestable United States Service Mark Registrations and in particular have been in use in commerce in connection since at least as early as April 1997, August 2005, June 2006 and December 2006 respectively.  (Rosa Dec., Exh. 7) .

The Cars 4 Causes service marks are of substantial value to Plaintiff and since April 1997 Plaintiff has spent over $25,000,000 in the development, advertising, marketing and promotion of Plaintiff's donation program services using the Cars 4 Causes service marks in making the Cars 4 Causes service marks familiar with the public who use charitable program services in the United States. (Palmer Dec. ¶6).

Based on Plaintiff's continuous and extensive use, advertisement, marketing and promotion of Plaintiff's donation program services using the Cars 4 Causes service marks, the Cars 4 Causes service marks including the suffix portions "Causes" and "Cause" have come to designate Plaintiff as the single source of origin for Plaintiff's donation program services as distinguished from the charitable donation program services of others. (Palmer Dec. ¶7, Rosa De., Exhs. 7, 18).

Plaintiff is also known as "The Charity That Gives To Charities" and America's 1st Vehicle Donation Charity and as of Plaintiff's last fiscal year of 2012, Plaintiff has shared net proceeds from over 170,000 vehicle donations with more than 16,500 non-profit organizations throughout the United States.  As of Plaintiff's last fiscal year, it has received over $126 million dollars in donations from

donors since its inception.  In addition, Plaintiff has received numerous testimonials from charities that have benefited from Plaintiff's donation program services. (Palmer Dec. ¶¶8, 9, Exhs. 18, 19).

In 2005, Plaintiff filed suit against Cars With A Cause, Inc. ("CWAC") and Jacob G. Colbert, Jr. ("JGC") ("C4C v. CWC action") based on the unauthorized use of the tradename Cars With A Cause, the designation Cars With A Cause and domain names carswithacause.org and carswithacauses.com in connection with the marketing of charitable vehicle donation program services. Arballo was the Administrative Contact for the subject domain names. (Rosa Dec. ¶3, Exh. 1, 13).

In May of 2005, the parties in the C4C v. CWC action agreed to settle with the entry of a Stipulation For Judgment and Consent Judgment which includes the Injunction and the execution of a separate settlement agreement.  As part of the Stipulation For Judgment, CWAC assigned all right, title and interest to the Cars With A Cause tradename and carswithacause.org domain name to JGC who then assigned the subject tradename and domain name to Plaintiff.  CWAC and Does 1 through 10 were also dismissed as parties. (Palmer Dec. ¶¶11-12; Rosa Dec., Exhs. 1, 2).

The Injunction enjoined JGC from among other things as follows: JGC "and his principals, agents, servants, successors and assigns and/or other representatives, and all persons acting in concert or participation with him, are permanently enjoined and restrained from all further use of the tradename 'CARS WITH A CAUSE' and the domain name 'carswithacause.org' or any other term confusingly similar to plaintiff's "CARS 4 CAUSES" service mark, tradename and domain names containing the CARS 4 CAUSES designation in connection with the advertising, distribution, offering for sale or sale of any charitable vehicle donation program services or any other business of defendant of any kind in the United States." (Rosa Dec., Exh. 1).

After the Injunction went into effect in June of 2005, Plaintiff later became aware in June of 2006 of the unauthorized use of the tradename Cars With Causes and the domain name carswithcauses.org by Cars With Causes, Inc. ("CWC") controlled by Arballo in connection with the sale of donated vehicles on CWC's Web Site.  Plaintiff through its attorney then notified Arballo and CWC in a letter dated June 22, 2006, of CWC's infringement of Plaintiff's federal service mark for CARS 4 CAUSES and common law service mark for Cars With A Cause.  The subject June 22 letter also notified Arballo of the Injunction issued in this action and that as the previous Administrative

Contact for Cars With A Cause, Inc. the prior owner of the carswithacause.org domain name, Arballo as an officer, agent and/or representative of CWAC was also prohibited under the Injunction from using the term "cars with a cause" or any other confusingly similar term as part of a tradename or domain name for the marketing of vehicle donation programs such as those offered by CWC or as a keyword to redirect potential customers of Plaintiff to the Cars With Causes' Web Site. (Palmer Dec. ¶13; Rosa Dec., Exhs. 1-15).

In June and July of 2006, Plaintiff's attorney and Arballo exchanged several emails concerning Plaintiff's attorney cease and desist letter of June 22, 2006, as to the unauthorized use of the Cars With Causes tradename and carswithcauses.org domain name, including the use of the same on the onlinecardonation.org web site controlled by Arballo, his ownership of the carswithcauses.com and carswithcauses.net domain names and request that they be voluntarily transferred to Plaintiff.  As a result of the exchange of correspondence between Plaintiff's attorney and Arballo, the unauthorized use of the infringing term Cars With Causes appeared to have ceased.  However, despite Plaintiff's request the carswithcauses domain names were never transferred to Plaintiff. (Rosa Dec. ¶14, Exh. 4; Palmer Dec. ¶14).

Since the Injunction went into effect in June of 2005, Plaintiff has used the Cars 4 Causes service marks and Cars 4 Causes tradename and cars4causes.net domain name extensively on its Web Site and in advertising in commerce in connection with Plaintiff's donation program services. (Palmer Dec. ¶15, Exh. 18).

In August, September and October, 2011, Plaintiff's attorney exchanged several letters with Arballo and WLIM's counsel concerning the unauthorized uses of WLIM's  Boats With Causes, Computer 4 Causes, With Causes and related designations and domain names on related Web Sites and which included a demand that the subject uses be discontinued and that WLIM voluntarily surrender for cancellation the U.S. Service Mark Registrations for With Causes and Computers 4 Causes owned by WLIM and to voluntarily abandon the U.S. Service Mark application for Boats With Causes. WLIM rejected Plaintiff's claims and also demanded that Plaintiff file for cancellation the U.S. Service Mark Registration for BOATS 4 CAUSES. (Rosa Dec., Exh. 5; Palmer Dec. ¶16).

On November 1, 2011, Plaintiff's attorney reiterated in a letter to WLIM's attorney that the continued use of the subject marks and domain names are an infringement of Plaintiff's Cars 4 Causes service marks and requested WLIM's voluntarily cooperation in discontinuing use of the same which was not complied with. (Rosa Dec., Exh. 5; Palmer Dec. ¶18).

In December 2011, Plaintiff filed suit in the U.S. District Court, Central District of California, against Works of Life International Ministries, Inc. ("WLIM") and Cameron L. Arballo aka Cameron L. Arballo, Jr. and aka Vincent Everett ("Arballo") as well as Does 1 through 10 after WLIM and Arballo refused to cease using the designations Boats With Causes, Computer 4 Causes, Computers With Causes, Collectible With Causes, Real Estate With Causes and With Causes in connection with the marketing and sale of charitable donation program services on several web sites as well registering numerous domain names using the subject designations without Plaintiff's authorization.  The action is entitled Cars 4 Causes v. Works of Life International Ministries, Inc. et al., Case No. CV11-10315 DMG (SHx) ("C4C v. WLIM action"). (Rosa Dec., Exh. 6).

On October 22, 2012, Plaintiff filed its First Amended Complaint in the C4C v. WLIM action for declaratory judgment of non-infringement of service mark, complaint for service mark infringement, false designation of origin, cyber piracy, cancellation of federal service mark registrations, tradename infringement, unfair competition and unfair trade practices.  In the filing of Plaintiff's First Amended Complaint, Arballo, WLIM and the Law Firm of RAJ ABHYANKER, P.C. who represents Arballo WLIM were also again put on notice of the Injunction.  In or about November 2012, Arballo and WLIM filed their answer and WLIM filed its amended counterclaims.  (Rosa Dec., Exh. 6).

During the course of discovery in the C4C v. WLIM action, Plaintiff has become aware of numerous violations of the Injunction by the Contempt Respondents as follows.

On or about April 22, 2013, WLIM provided written responses to Plaintiff's first set of interrogatories and requests for admissions which confirm that Arballo was responsible for the selection, adoption and use of Contempt Respondent, WLIM's domain names and designations which are the subject of this contempt motion; that Arballo was an officer, director and agent of WLIM sometime during the period of September 11, 2007 (date of WLIM incorporation in the State of

Nevada) to the present; and that WLIM was the registrant of and had an ownership interest in the domain names boatswithcauses.org, boatswithcauses.com, computerswithcauses.com, collectiblewithcauses.org, collectiblewithcauses.net, collectiblewithcauses.com, realestatewithcauses.org, realestatewithcauses.net, realestatewithcauses.com, withcauses.org, with causes.net and withcauses.com. (Rosa Dec. ¶12, Exh.10).

On or about May 31, 2013, Contempt Respondent, Giving Center having full knowledge of the Injunction through its attorney Raj Abhyanker of the Law Firm of RAJ ABHYANKER, P.C. filed with the United States Patent and Trademark Office ("USPTO") service mark application for the marks REALESTATE CAUSES.ORG, AIRCRAFT CAUSES, BOAT CAUSES, COLLECTIBLE CAUSES, MOTORCYCLE CAUSES.ORG and COMPUTER CAUSES all for charitable fund raising services ("unauthorized designations") (Rosa Dec. ¶9, Exh. 7).  Plaintiff's counsel in a letter dated June 6, 2013, informed Arballo and WLIM's attorney that the subject marks were infringing upon Plaintiff's Cars 4 Causes service marks and demanded that Arballo and WLIM cease all further use of the same and voluntarily abandon the USPTO applications for the subject marks which request was ignored. (Rosa Dec. ¶13, Exh. 7).

On several occasions Plaintiff has received misdirected inquiries from potential donors who believed that Plaintiff was connected with Contempt Respondents' Web Sites.  For example, in June and July 2013, Plaintiff's staff received misdirected inquiries concerning the status of donated boats, that were in fact donated to Contempt Respondents' Boats With Causes and not Plaintiff's BOATS 4 CAUSES donation programs for boats. (Palmer Dec. ¶24, Exhs. 18 and 21).

On or about July 11, 2013, Plaintiff's counsel took the deposition of Arballo and WLIM in the C4C v. WLIM action and the deposition testimony of Arballo confirmed that Arballo is the central figure and active conscious force behind the incorporation of Contempt Respondents' Nevada corporations, namely, WLIM, Works of Life Ministries, Online Car Donations.org, Inc., Boats With Causes.Org, Inc. Giving Center and With Causes, Inc.; that Arballo was an officer or director of WLIM, Works of Life Ministries, Online Car Donation.Org, Inc. and Boats With Causes.Org; that Arballo determined the policies that resulted in the violation by Contempt Respondents of the Injunction; and that Contempt Respondents all have a close identity of interest with those persons or

entities bound by the Injunction. (Rosa Dec. ¶¶13, 14, Exhs. 10, 11, pages 13-45, 59-62, 124-153, 175-178, 183-190).

Plaintiff's counsel also confirmed in the Arballo deposition that Arballo was the Administrative Contact for the carswithacause.net domain name when owned by defendant Cars With A Cause, Inc. and the WHOIS Record references the email address of worksoflife@gmail.com the email also used by Arballo.  In this respect, the California Secretary of State Business Entity Detail Database indicates that Arballo is the Agent for Service of Process and Chief Executive Officer, Secretary and Chief Financial Officer for the suspended California corporations for Works Of Life Ministries, Inc. and Works Of Life and Agent for Service of Process and Incorporator for the suspended California corporation for Cars 2 Causes, Inc. all having the same business address of 1175 Shaw Avenue, #104-135, Clovis, California which is the same address used by WLIM. (Rosa Dec. ¶¶17, 18, Exhs. 13, 14).

On August 13, 2013, Plaintiff became aware of the unauthorized use of the term "Boat Causes" on Contempt Respondents Boats Causes' Web Site which Plaintiff's attorney requested be removed in a letter dated August 13, 2013, to Contempt Respondents' attorney. (Palmer Dec. ¶28; Rosa Dec. ¶19, Exh. 16).  Although the subject Web Site was revised to delete the reference to "Boat Causes", the "boatcause" keyword is still being used to redirect potential donors of Plaintiff to Contempt Respondents' Web Site "Charity Boat.Org". (Palmer Dec. ¶28, Exh. 23; Rosa Dec. ¶19, Exh. 16).

Based on the evidence of Contempt Respondents' past conduct of multiple incorporation filings including the registration, warehousing of multiple domain names and continued use of the Web Sites and domain names using the unauthorized terms "Causes" it appears likely that Contempt Respondents will continue to infringe upon Plaintiff's Cars 4 Causes service marks. (Palmer Dec. ¶29, Exh. 20; Rosa Dec. ¶15).

Contempt Respondents' continued infringing uses of the unauthorized designations described above in violation of the Injunction has caused damage to Plaintiff's business reputation, goodwill and loss of donations from donors in an amount now exceeding $5,000,000.  Plaintiff also estimates that the cost to correct the public confusion caused by Contempt Respondents' infringing conduct will exceed $20,000.  In addition, Contempt Respondents unauthorized registration of the domain names identified above which are confusingly similar to Plaintiff's distinctive Cars 4 Causes service marks

have caused damage to Plaintiff in amount exceeding $280,000 under the provisions of the Lanham Act relating to cyber piracy.  Furthermore, Plaintiff has expended to date over $21,000 in management time and expense in investigating and preparing for Plaintiff's motion for contempt against Contempt Respondents.  Finally, Plaintiff's attorney's fees and costs in pursuing the contempt motion against Contempt Respondents have already exceeded $45,000 to date.  As such, the evidence also supports that a bond should required to be posted by Contempt Respondents in the amount of at least $500,000 to secure payment for damages caused by Contempt Respondents and to guarantee future compliance with the Content Judgment. (Palmer Dec. ¶30).

## II.

## <u>ARGUMENT</u>

The Court has the inherent power to enforce compliance with its lawful orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to that order." *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 386 (1980). "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).  Sanctions may include fines, imprisonment, and payment of plaintiff's attorney's fees spent in obtaining compliance with the Court's Orders.  *BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991).

An injunction binds not only "(A) the parties" to an action, but also "(B) the parties' officers, agents, servants, employees, and attorneys; and "(C) other persons who are in active concert or participation with any described in Rule 65(d)(2)(A)or B)". Fed. R. Civ. P. ("FRCP") 65(d)(2).  A nonparty with actual notice may be held in contempt when the nonparty is otherwise "legally identified" with the enjoined party.  See, e.g., *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998) and *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 37-40 (1st. Cir. 1980).

In a proceeding for civil contempt, the moving party must demonstrate violation of a court order by clear and convincing evidence.  See *In re Dual-Deck Video Cassette Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). A party may be held in contempt where it "fail[ed] to take all reasonable steps within the party's power to comply [with a specific and definite court order]." Id.  Willfulness is not an element of contempt. Id. ("there is no good faith to the requirement of obedience of a court order") *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999).  Here, the totality of evidence shows that Contempt Respondents have engaged in precisely the conduct that the Injunction prohibits.

### A.   The Injunction is Clear and Unambiguous

The language in the Injunction is clear and unambiguous: this Court prohibited the Contempt Respondents from, inter alia, using "the tradename 'CARS WITH A CAUSE' and the domain name 'carswtihacause.org or <u>any other term confusingly similar to plaintiff's 'CARS 4 CAUSES' service mark, tradename and domain names containing the CARS 4 CAUSES designation in connection with any advertising, distribution, offering for sale or sale of any charitable vehicle donation program services… in the United States.</u>" (Emphasis added) (Rosa Dec. Exh. 2).  See, e.g., *Wolfard Glassblowing Co. v.VanBragt*, 118 F.3d 1320, 1322-23 (9th Cir. 1997); *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2nd Cir. 1994); and *Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1116-17 (9th Cir. 1990).

### B.   The Contempt Respondents Are All Bound By This Court's Injunction

As set forth above an injunction bounds not only the parties to an action, but also "their officers, agents, servants, employees and attorneys, and … persons in actual concert or participation with them" who receive actual notice of the Court's Order FRCP 65(d).  Here, the Injunction binds JGC and "his principals, agents, servants, successors and assigns and/or other representative, all persons acting in concert or participation with him" as well as all the Contempt Respondents. (Rosa Dec., Exh. 2 at 2).  In this respect, the evidence establishes that Arballo who was an agent of CWAC and JGC continues to use designations and domain names which are confusingly similar to Plaintiff's Cars 4 Causes service marks, tradename and domain names containing the Cars 4 Causes designation in connection with the marketing of charitable vehicle donation programs before and after the Injunction with the knowledge of the Injunction. (Palmer Dec. ¶¶1-29, Exhs. 1-23; Rosa Dec., Exhs. 1-

15).  Moreover, the evidence also establishes that the other Contempt Respondents, namely, WLIM Works of Life Ministries, Online Car Donation.Org Inc., Boats With Causes.Org, Giving Center and With Causes, Inc. are aiding and abetting Arballo's violation of the Injunction. (Palmer Dec. ¶¶1-29, Exhs. 17-23; Rosa Dec., Exhs. 1-15).

As such all the Contempt Respondents are bound by the Injunction, See e.g. *Merriam*, 639 F2d at page 37-40 (There the Court held that a former employee of an enjoined corporation who had such a "key role" in the company and the underlying litigation could be "legally identified" with the enjoined corporation and therefore held in contempt for using a newly formed company to circumvent the Injunction.) and *Additive Controls & Measurements Sys., Inc.*, 154 F.3d 1345, 1351-1352 (Fed. Cir. 1998) (using "legal identification" test to find non-parties in contempt and favorably citing *Merriam*).

## C.    The Contempt Respondents Are In Contempt of This Court's Injunction

The principle question in service mark infringement contempt proceedings is not whether the new service mark adopted by the enjoined defendant is an infringement of plaintiff's service mark. The issue is whether defendant violated a consent judgment. See, *Wolfard*, 118 F.3d at 1322-23. There the Ninth Circuit held that a plaintiff "who already has a judgment establishing that the defendant has infringed [a trademark] is not required to muster all of the evidence it would need to make out an original infringement case in order to prove contempt."

An enjoined defendant must keep a "safe distance from the margin line-even if that requirement involves a handicap as compared with those who have not disqualified themselves." *Id*. Consequently, a party enjoined by court order has an obligation to do more than show how close it can come to a protected mark which is the subject of an injunction.  *Id*.

Moreover, any doubts are resolved against the enjoined defendant.  See *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) ("[A] trademark plaintiff entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted."

//

//

The tradename and domain name designations that are the subject of this Court's Injunction include the tradename "CARS WITH A CAUSE", the domain name "carwithacause.org"; and "any other term confusingly similar to plaintiff's 'CARS 4 CAUSES' service mark, tradename and domain names containing the "CARS 4 CAUSES" designation …" (Rosa Dec., Exh. 2).

Despite the Injunction, the Contempt Respondents began using the following designations as tradenames and/or service marks after the entry of the Injunction in June 2005: Cars 2 Causes, Inc., Boats With Causes, Boat Causes, Computer 4 Causes, Computers With Causes, Collectible With Causes, Real Estate With Causes and With Causes in connection with the marketing of charitable donation program services on web sites or as keywords to direct potential donor customers of Plaintiff to Contempt Respondent's various web sites. (See Palmer Dec. ¶¶3-28 Exhs. 18-23; Rosa Dec., Exhs. 8, 9 12-16).   Thus, the subject Web Site Pages, Google and Yahoo Search Result pages clearly establish that Contempt Respondents are in violation of the Injunction.

Additionally, Contempt Respondents WLIM and the Giving Center filed applications with the United States Patent and Trademark Office ("USPTO") for several marks prohibited by the Injunction including two which have issued to registration, namely, the U.S. Service Mark Registrations for With Causes and Computer 4 Causes and the U.S. Service Mark applications for Boats With Causes, Realestatecauses.Org, Aircraft Causes, Boat Causes, Collectible Causes, Motorcycle Causes.Org and Computer Causes.  All of the dates of first use alleged in the subject registrations and pending applications (where use is alleged) are after Contempt Respondents' notice of the Injunction with the exception of the With Causes application which alleged a first use of May 15, 2006.  However, Arballo was already on constructive notice of Plaintiff's CARS 4 CAUSES service mark as of October 29, 2002, the date of registration with the USPTO.  The fact that the above noted USPTO applications of Contempt Respondents, WLIM and Giving Center, were all filed under penalty of perjury to support the basis for their filings, all demonstrate that the Contempt Respondents violated the Injunction which clearly enjoined use of the subject marks in the United States.  See 15 U.S.C. § 1051.

//

//

//

1  Contempt Respondents, on information and belief, have also registered and/or used on or in

2  connection with Contempt Respondents' Web Sites the following domain names: carswithacause.net,

3  cars4acause.org, cars4acause.com, carswithcauses.com, carswithcauses.net, carswithcauses.org,

4  boatswithcauses.org, boatswithcauses.com, computerswithcauses.com, computerswithcauses.net,

5  computerswithcauses.org, collectibleswithcauses.org, collectibleswithcauses.net,

6  collectibleswithcauses.com, realestatewithcauses.com, realestatewithcauses.net,

7  realestatewithcauses.org, realestatecauses.com, realestatecauses.org, withcauses.com, withcauses.net,

8  withcauses.org, motorcyclecauses.org, aircraftcauses.com, boatcauses.com, boatcauses.org,

9  collectiblecauses.com, collectiblecauses.net, collectiblecauses.org, computercauses.com and

10  computercauses.org. ("unauthorized designations").   The subject domain names appear to have all

11  been registered after the Injunction became effective on June 2, 2005. (Palmer Dec. ¶¶3-27, Exhs. 18-

12  23; Rosa Dec., Exhs. 8, 9, 12-16).

13  Contempt Respondents since the date of the entry of the Injunction in June 2005 to the present

14  have used the above noted unauthorized designations as part of tradenames, service marks and domain

15  names in connection with charitable vehicle donation program services all of which are confusingly

16  similar to Plaintiff's Cars 4 Causes tradename and service marks used for charitable vehicle donation

17  program services. This conduct of Contempt Respondents also violates the terms of the Injunction.

18  (Palmer Dec., Exh. 20; Rosa Dec. Exh. 2).

19  Contempt Respondents are fully aware that they have not maintained a safe distance from the

20  enjoined activity as set forth in the Injunction.  In fact, Contempt Respondents serial service mark

21  applications filings and domain name registrations which use terms confusingly similar to Plaintiff's

22  Cars 4 Causes tradename and service mark make clear their intention to get a free ride upon the

23  reputation of Plaintiff's well known Cars 4 Causes service marks.  This conduct by Contempt

24  Respondents clearly points to a total disregard of the Injunction or at best nothing more than an attempt

25  "to make minimal changes…. In order to test the outer boundaries of [the Injunction]." *Wolfard*, 118

26  F.3d at 1323.

27  //

28  //

**D.     The Contempt Respondents' Acts of Service Mark Infringement And Unfair Competition Violate the Injunction**

The issue in the present contempt motion is not whether Contempt Respondents infringed upon Plaintiff's Cars 4 Causes service marks but whether Contempt Respondents violated the Injunction. *Wolfard*, 118 F.3d at 1322-23. In order to establish a violation of the Injunction, Plaintiff does "need not prove a likelihood of confusion in the same manner that [the Court] would require in a trademark infringement case. *Id.* Moreover, as stated in *Wella* (cited with approval in *Wolfard*), "[w]hen enforcing injunctions that enjoin use of any mark confusingly similar to the protected mark, courts should not adjudicate issues such as product proximity but should simply evaluate whether or not the new mark is confusingly similar to the protected mark…". *Id.*  In applying the *Wolfard* rationale to the instant Contempt Motion, Plaintiff submits that Contempt Respondents' acts of service mark infringement are in violation of the Injunction for the reasons stated below.

A plaintiff in a service mark infringement or unfair competition action has a burden of proving only that: (a) it owns one or more federal registrations for its marks; (b) its use of those marks began before defendant's use; (c) defendants' use is without plaintiff's consent; and (d) defendant's use is likely to cause confusion or to cause mistake, or to deceive consumers as to the origin, sponsorship or affiliation of defendant's services. 15 U.S.C. § 1114(1)(a).  See *Century 21 Real Estate v. Sandler*, 846 F.3d 1175, 1178 (9th Cir. 1988) and *Brookfield Communications v. West Coast*, 174 F.3d 1036, 1046 (9th Cir. 1999) and 15 U.S.C. § 1125(a)(1).  Here, Plaintiff's Cars 4 Causes service mark registrations are prima facie evidence of the marks' validity and Plaintiff's exclusive right to use these marks in commerce. 15 U.S.C. §§ 1057(6), 1115(a).  In addition, the CARS 4 CAUSES, CARS WITH A CAUSE, CARS FOR A CAUSE and CARS FOR CAUSES Service Mark Registrations have achieved incontestable status under 15 U.S.C. §§ 1065, 1115(b). (Rosa Dec., Exh. 7).

**1.     Infringement of Plaintiff's Cars 4 Causes Service Marks**

In the Ninth Circuit, the following factors are weighed in determining whether there is a likelihood of confusion: (1) similarity of the conflicting marks; (2) relatedness or proximity of the products or services; (3) strength of the mark; (4) marketing channels used; (5) types of goods or

1   services and the degree of care likely to be exercised by the purchaser; (6) defendant's intent in

2   selecting the mark; (7) evidence of likelihood of confusion; and (8) likelihood of expansion of product

3   lines. See *Brookfield*, 174 F.3d at 1053-54 and *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49

4   (9th Cir. 1979).  However, in the internet context, some of the *Sleekcraft* facts have been found more

5   important, namely, (1) similarity of the marks; (2) relatedness of the services and (3) simultaneous use

6   of the internet as a marketing channel, otherwise known as the "Internet Troika", are of the "greatest

7   importance."  *Internet Specialties West, Inc. v. Milon-Digiorgio Enters*, 559 F.3d 985, 989 (9th Cir.

8   2009).

9        In applying the *Sleekcraft* and Internet Troika factors to Plaintiff's motion for contempt, the

10  evidence clearly establishes a confusing similarity between Plaintiff's Cars 4 Causes service marks and

11  Contempt Respondents' designations and domain names to support a finding of infringement as shown

12  by the following: (1) The distinctive suffix term "causes" which is used in several of Plaintiff's Cars 4

13  Causes service marks is also contained in Contempt Respondents' designations and domain names.  In

14  addition, several of the respective marks include either the identical or similar prefix terms, or

15  incorporate terms that are classified in the 'vehicle' category which is defined as "a. A device or

16  structure for transporting persons or things… b. A self-propelled conveyance that runs on tires; a motor

17  vehicle." See *The Free Dictionary By Farlex*.  Thus, the subject marks when viewed in their entirety

18  and when encountered in the market place are closely similar in sight, sound and meaning to establish a

19  likelihood of confusion; (Rosa Dec., Exhs. 8, 9; Palmer Dec. Exhs. 18, 20), *Sleekcraft*, 599 F.2d at

20  350-52; (2) The evidence also clearly shows that Plaintiff and Contempt Respondents are offering

21  nearly identical charitable donation program services over the Internet. (Palmer Dec., Exhs. 18, 20),

22  *Brookfield*, 174 F.3d at 1057; (3) Likewise, Plaintiff's CARS 4 CAUSES, CARS WITH A CAUSE,

23  CARS FOR A CAUSE and CARS FOR CAUSES marks are now incontestable and are all

24  conclusively presumed valid and protectable and are strong and distinctive marks in the charitable

25  donation program services market place. (Rosa Dec., Exh. 7; Palmer Dec. ¶¶3-9, Exhs. 17-19),

26  *Brookfield*, 174 F.3d at 1047; (4) As set forth above, the parties respective marking channels are both

27  offered on their Web Sites on the Internet which supports a finding of likelihood of confusion; (5) Both

28  parties respective charitable donation services are also offered to the same ordinary consumer as

- 14 -

opposed to a "discerning" consumer which also supports a finding of likelihood of confusion. (Palmer Dec., Exhs. 18, 20), *Brookfield*, 174 F.3d at 1060; (6) Contempt Respondents' adoption of the unauthorized designations and domain names in question with actual and/or constructive knowledge of Plaintiff's Cars 4 Causes service marks and Contempt Respondents failure to conduct trademark searches to determine whether any conflicts existed with Plaintiff's Cars 4 Causes service marks also supports a finding of likelihood of confusion. (Rosa Dec., Exh. 11, pages 60-61, 124-139). See *Brookfield*, 174 F.3d at 1059; *Sleekcraft*, 599 F.2d at 354.  In the Internet context, courts have in particular found that the "intentional registration of a domain name knowing that . . . (it) is another company's valuable trademark weighs in favor of likelihood of confusion". *Id.*  "Evidence that the use of two marks has already led to confusion is persuasive proof that future confusion is likely". *Sleekcraft*, 599 F.2d at 352.  Plaintiff has provided evidence of actual confusion between Plaintiff's Cars 4 Causes service marks and Contempt Respondents designations to support a finding of likelihood of confusion. (Palmer Dec. ¶24, Exh. 21); and (8) Plaintiff has also established that since the entry of the Injunction, Plaintiff has broadened the marketing of its charitable donation program services to include soliciting donated vehicles for charitable fundraising for donor designated community based education and cultural programs and soliciting the donation of boats, motorcycles, consumer goods, consumer electronic products and RVs for charitable fundraising purposes which are all similar programs offered by Contempt Respondents.  Thus, this factor also supports a finding of likelihood of confusion. (Palmer Dec. ¶¶3-9, Exhs.18, 19). *Brookfield*, 174 F.3d at 1060.

> **2.    Infringement of Plaintiff's Cars 4 Causes Tradename**

"Under both California Common law and statutes, whosoever first adopts and uses a tradename, either within or without the state, is its original owner" and is entitled to injunctive relief against an unauthorized use of "any confusingly similar name or tradename." *American Petrofina, Inc. v. Petrofina of California, Inc.* 596 F.2d 896, 897-99 (9th Cir. 1979).  Under California Business and Professions Codes § 14415, Plaintiff is also entitled to a presumption that it has exclusive right to use the Cars 4 Causes tradename in California.

Plaintiff has provided clear evidence that it incorporated in the State of California on July 3, 1997, well prior to the infringing acts of Contempt Respondent.  Plaintiff has also continuously used

the term Cars 4 Causes as a tradename since 1997, which also supports a finding of tradename infringement by Contempt Respondents in violation of the Injunction. (Palmer Dec. ¶3, Exh. 17).

### E.    The Contempt Respondents' Acts of Cyber Piracy Violate the Injunction

The Injunction in the instant action specifically prohibits "all further use of … the domain name 'carwithacause.org' or any other term confusingly similar to plaintiff's 'CARS 4 CAUSES' service marks.." As such, Plaintiff submits that Contempt Respondents use and registration of the unauthorized designations using the term "causes" constitutes cyber piracy within the meaning of 15 U.S.C. § 1125(d).  See, *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005).

A cyber piracy plaintiff has the burden of proving only that: (1) it has a valid trademark (service mark) entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of a famous marks, dilutive of, the owner's mark; (4) the defendant, used, registered or trafficked in the domain name; and (5) with a bad faith intent to profit." *Id.*

Here the evidence establishes that Plaintiff's Cars 4 Causes service marks valid and distinctive; that the CARS 4 CAUSES, CARS WITH A CAUSE, CARS FOR A CAUSE and CARS FOR CAUSES have achieved incontestable status (Rosa Dec., Exh. 7); that Contempt Respondents' domain names are confusingly similar to Plaintiff's Cars 4 Causes service marks; that Contempt Respondents used and or registered domain names using the unauthorized designations and that Contempt Respondents used and or registered the subject domain names with the bad faith intent to profit on Plaintiff's goodwill and reputation associated with the Cars 4 Causes service marks. (Rosa Dec., Exhs. 2, 5-7, 11, 15; Palmer Dec. ¶¶13, 22-29). *Id.*

Thus, Plaintiff's requests that this Court award statutory damages to Plaintiff for Contempt Respondents' acts of cyber piracy in the amount of at least $280,000 based on Contempt Respondents' registration of the twenty-eight domain names identified in Exhibit 13 of the Rosa Dec.  See 15 U.S.C. §§ 1125(d)(1); 1117(d).

//

//

//

**F.     Sanctions Should Be Imposed Against the Contempt Respondents**

It is well-settled that a court may sanction a party held in civil contempt to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal*, 787 F.2d at 1380.

Plaintiff has provided clear and convincing evidence that the Contempt Respondents have violated the Injunction, and have done so willfully and knowingly with complete disregard for this Court's authority.  Consequently, Plaintiff is entitled to attorney's fees and costs incurred in prosecuting this motion.  See *Shillitani*, 384 U.S. at 370; *BMG Music*, 952 F.2d at 320.  In addition, Plaintiff requests an award of damages including a corrective advertising award which now exceeds $500,000 (Palmer Dec. ¶30). See, *General Signal*, 787 F.2d at 1380 (Court may allow plaintiff to recover complainant's actual losses sustained as a result of past contempt.) and *Adray v. Adray-Mart, Inc.*, 76 F.3d 984, 990-91 (9th Cir. 1995) (There the Court held that a jury instruction was proper to permit a prospective advertising award.). (Palmer Dec. ¶¶29, 30).

**G.     Contempt Respondents Should Be Required To Post A Bond**

Contempt Respondents have acted in deliberate defiance of the Court's Injunction.  As such, Plaintiff requests that Contempt Respondents should be required to post a bond at least in the amount of $500,000.00 based on the damages caused to Plaintiff by Contempt Respondents' contempt and to assure their future compliance with the Court's orders as it relates to the Injunction.  See *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 (9th Cir. 1992) ($1 million bond is appropriate to secure payment of both coercive fine and compensatory damages caused by contempt.). (Palmer Dec. ¶30).

**H.     Expedited Discovery Is Proper In This Action**

Federal Rules of Civil Procedure, Rule 26(d) and 33(a) authorizes the Court to order expedited responses to discovery for good cause.  In the instant contempt action, Plaintiff submits that expedited discovery is proper in view of the substantial evidence which supports a finding of civil contempt by Contempt Respondents in this action.  Expedited discovery is also justified to guard against the possibility that Contempt Respondents may destroy, alter, move or hide evidence or records and transfer of ownership of Contempt Respondents' domain names relevant to Plaintiff's contempt motion. (Palmer Dec. ¶¶29, 30).

### III.

### <u>CONCLUSION</u>

Without the relief requested by Plaintiff, further violation of the Injunction will continue unabated and as a result, Plaintiff will suffer further irreparable harm to the goodwill and reputation of the Cars 4 Causes service marks and tradename.  For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for an order to show cause why the Contempt Respondents should not be held in contempt and an order for expedited discovery to be granted.

Respectfully submitted,

LAW OFFICES OF EDOUARD V. ROSA

Dated:  September 10, 2013                  /s/Edouard V. Rosa
                                            Edouard V. Rosa
                                            Attorney for Plaintiff
                                            CARS 4 CAUSES

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 28047 Dorothy Drive, Suite 305, Agoura Hills, California 91301.

     On **September 10, 2013**, I served the foregoing documents described as **NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT OF CONSENT JUDGMENT AND ORDER FOR EXPEDITED DISCOVERY; NOTICE OF RELATED CASE RE: PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT OF CONSENT JUDMENT AND ORDER FOR EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT OF CONSENT JUDGMENT; DECLARATION OF EDOUARD V. ROSA IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT OF CONSENT JUDGMENT AND ORDER FOR EXPEDITED DISCOVERY; DECLARATION OF PATTI PALMER IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT OF CONSENT JUDGMENT AND ORDER FOR EXPEDITED DISCOVERY AND (PROPOSED) ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT OF CONSENT JUDGMENT AND ORDER FOR EXPEDITED DISCOVERY** on Contempt Respondents and their attorneys by placing true confirming copies thereof enclosed in a sealed envelope addressed as follows:

Bruno W. Tarabichi, Esq.
RAJ ABHYANKER, P.C.
1580 W. El Camino Real, Suite 13
Mountain View, CA 94040

Cameron L. Arballo
1175 Shaw Ave. #104-135
Clovis, CA 93612

T. Yarbrough, President
WORKS OF LIFE INTERNATIONAL MINISTRIES, INC.
WORKS OF LIFE MINISTRIES
ONLINE CAR DONATION.ORG, INC.
BOATS WITH CAUSES.ORG
GIVING CENTER
WITH CAUSES, INC.
1175 Shaw Ave. #104-135
Clovis, CA 93612

[ **X** ]  by placing the documents listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Agoura Hills, California addressed as set forth above.

[ **X** ]  by electronic email: bruno@legalforcelaw.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on <u>**September 10, 2013**</u>, at Agoura Hills, California.

<u>    Sonia E. Rosa    </u>
Type or print name

Signature